UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X   Docket No.: 1:23-cv-3627
VINCE DEMARIA,
                            Plaintiff,   COMPLAINT FOR DAMAGES DECLARATORY RELIEF AND INJUNCTIVE RELIEF

             -against-

NEW YORK STATE UNIFIED COURT SYSTEM   JURY TRIAL DEMANDED
AND NEW YORK STATE OFFICE OF COURT
ADMINISTRATION
                      Defendants.
------------------------------------------------------------X

     PLAINTIFF, VINCE DEMARIA ("Plaintiff"), by his attorneys, PACIFIC JUSTICE INSTITUTE, INC., through local counsel, April Forbes, hereby complains of the DEFENDANTS, NEW YORK STATE UNIFIED COURT SYSTEM ("UCS") and NEW YORK STATE OFFICE OF COURT ADMINISTRATION ("OCA"), as follows:

**NATURE OF THE CASE:**

     1.    This action results from Plaintiff being denied a reasonable accommodation and wrongfully terminated by Defendants, which refused to grant an exemption from any COVID-19 vaccine(s) due to Plaintiff's sincerely held religious beliefs.

     2.    This action asserts causes of action sounding in violation of Title VII of the Civil Rights of 1964, as codified, 42 U.S.C. 2000e to 2000e-17, *as amended*, ("Title VII").

     3.    This action seeks the following relief: (a) full reinstatement of Plaintiff's employment with UCS/OCA; (b) the purging, expungement and removal of all negative: reports, codes, statements and references within Plaintiff's personnel and/or employment record(s); (c) damages; and (d) all other available relief resulting from religious discrimination.

## PARTIES:

4. Plaintiff has resided in the State of New York for all relevant time periods herewith.

5. Since 1997 and continuing until termination in August of 2022, Plaintiff was employed by UCS.

6. UCS is the Judicial Branch of New York State with a principal place of business located at 25 Beaver Street, New York, New York.

7. OCA is the administrative arm of UCS with a principal place of business located at 25 Beaver Street, New York, New York.

## JURISDICTION AND VENUE:

8. This action arises under the laws of the United States, including 42 U.S.C. 2000e, et seq.

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343, and 1367.

10. Plaintiff also seeks declaratory and injunctive relief as authorized by 28 U.S.C. §§ 2201 and 2202, pursuant to Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

11. Venue is proper within this judicial district and division, pursuant to 28 U.S.C. §1391(b), because relevant events occurred in this jurisdictional district.

## PROCEDURAL REQUIREMENT(S) AND EXHAUSTION OF ADMINISTRATIVE REMEDY(IES):

12. Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

13. On or about February 15, 2023, the EEOC issued a Notice of Right to Sue.

14. As such, Plaintiff has timely filed this instant action and complied with all administrative and procedural requirements necessary to the commencement of this suit.

## RELEVANT BACKGROUND INFORMATION:

15. UCS is the judicial branch of the government established pursuant to Article VI of the New York State Constitution that oversees all courts in the State of New York.

16. Pursuant to New York State Civil Service Law §201(6), UCS is a public employer.

17. The mission of UCS is to promote the rule of law and to serve the public by providing just and timely resolution of matters before the courts.

18. OCA is the administrative arm of UCS, and was established pursuant to New York State Judiciary Law §212(1)(b).

19. OCA promulgates rules and policies for the operation of UCS, which applies to all courts in the State of New York.

20. Plaintiff was employed by UCS for approximately twenty-five years, beginning in 1997 and continuing into 2022.

21. Initially, Plaintiff was hired to work in the position of a Court Officer with UCS.

22. Eventually, during the course of Plaintiff's career with UCS, Plaintiff was promoted to the position of a Court Clerk.

23. For all relevant periods of time pertaining to the allegations of this Complaint, Plaintiff was assigned to work at the Civil Court of the City of New York on behalf of UCS.

24. Plaintiff was a dedicated worker and received good performance reviews.

**Mandatory COVID-19 Vaccination Policy:**

25. On or about August 25, 2021, UCS/OCA issued an announcement that all non-judicial employees would have to become vaccinated against COVID-19 and comply with its

3

Mandatory Vaccination Program (hereinafter "Vaccination Mandate") no later than September 27, 2021, or risk imminent and adverse employment, retirement, and medical consequences.

26. UCS/OCA permitted employees to submit a request for either a religious or medical accommodation to be exempted from compliance with the Vaccination Mandate.

27. A Vaccination Exemption Committee (hereinafter "Committee") was designated to review requests for reasonable accommodations to be exempted from compliance with the Vaccination Mandate and make the determination on behalf of UCS/OCA as to whether or not to grant a request for a reasonable accommodation.

28. Upon information and belief, the Committee did not meet with any of the employees making the requests for a reasonable accommodation to be exempted from compliance with the Vaccination Mandate in connection with the Committee's ultimate decision making as to whether or not to grant a request for a reasonable accommodation.

29. If requests for a reasonable accommodation were denied by the Committee, employees of UCS would not be afforded any opportunity to appeal or otherwise seek reconsideration.

30. Instead, any employees of UCS whose request for a reasonable accommodation were denied were given a limited window of time to comply with the Vaccination Mandate or, alternatively, be deemed as unfit to work, excluded from the workplace, and eventually terminated.

**Plaintiff's Request for a Reasonable Accommodation:**

31. On or about March 31, 2022, Plaintiff submit a request for a reasonable accommodation to be exempted from the Vaccination Mandate due to a conflict between Plaintiff's sincerely held religious beliefs and receiving any COVID-19 vaccine(s). (See **Exhibit "A"**).

32. Plaintiff's religious beliefs include the highest regard for the sanctity of life and that abortion is an exceptionally grave sin in accordance with Matthew 18:6 and Psalm 139:13.

33. As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (bold emphasis original).

34. The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine, which used PER.C6 fetal cell line, "is a retinal cell line that was **isolated from a terminated fetus in 1985**." Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Aug. 2, 2021) (emphasis added).

35. Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine. *Meredith Wadman*, *Vaccines that use human fetal cells draw fire*, Science (June 12, 2020), *available at* https://science.sciencemag.org/content/368/6496/1170.full (last visited Aug. 2, 2021).

36. Also, both Moderna and Pfizer/BioNTech COVID-19 vaccines have their origins in research on aborted fetal cells lines.

37. As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, the Moderna and Pfizer mRNA vaccines are ultimately derived from research and testing on aborted fetal cell lines. In fact, "[e]arly in the

development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (emphasis added).

38. The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines. Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Aug. 2, 2021).

39. As respects Plaintiff's request for a reasonable accommodation to be exempted from compliance with the Vaccination Mandate due to his religious beliefs relative to the sanctity of life, on or about April 28, 2022, UCS/OCA, through its Vaccination Exemption Committee, requested additional information from Plaintiff. (See **"Exhibit B"** and **"Exhibit C"**).

40. The additional information requested by the Vaccination Exemption Committee included the execution of a document entitled Supplemental Affidavit of Religious Objection to COVID-19 Vaccination ("Supplemental Affidavit") wherein UCS/OCA provided its version of the claimed facts regarding the connection or lack thereof between fetal cells and the development of COVID-19 vaccine(s).

41. Plaintiff signed the Supplemental Affidavit as requested by UCS/OCA attesting to the following "Even after reviewing all of the facts above, I swear or affirm that taking any of the

COVID-19 vaccines would violate my sincere religious beliefs due to their connection to fetal cell lines in either testing or production." (See Exhibit C).

42. The additional information requested by the Vaccination Exemption Committee also included a questionnaire requesting Plaintiff to disclose whether he has ever used any of the pharmaceutical drugs listed on the questionnaire which have allegedly been tested using fetal cell lines. (See Exhibit C).

43. For any pharmaceutical drugs on the questionnaire which Plaintiff indicated in the affirmative that he had used in the past, Plaintiff was required to provide an explanation as to how Plaintiff's religious beliefs allowed him to take the other drug, but not any COVID-19 vaccine(s). (See Exhibit C).

44. On June 8, 2022, the Vaccination Exemption Committee requested additional information in connection with Plaintiff's request for a reasonable accommodation. (See **"Exhibit D"**).

45. On June 9, 2022, Plaintiff responded to the request made by the Vaccination Exemption Committee in connection with Plaintiff's request for a reasonable accommodation. (See **"Exhibit E"**).

46. On June 23, 2022, Plaintiff received notice from the Vaccination Exemption Committee that the request for a reasonable accommodation to be exempted from compliance with the Vaccination Mandate was denied. (See **"Exhibit F"**).

47. The denial of Plaintiff's request for a reasonable accommodation to be exempted from the Vaccination Mandate was without any explanation or justification for the denial. (See Exhibit F).

48. Upon information and belief, UCS/OCA granted numerous requests for a reasonable accommodation exempting employees of UCS from compliance with the Vaccination Mandate due to the employees' sincerely held religious beliefs.

49. Upon information and belief, the employees of UCS who received a reasonable accommodation exempting them from compliance with the Vaccination Mandate were allowed to remain in the workplace unvaccinated while wearing a mask and undergoing weekly COVID-19 testing.

50. Plaintiff is aware of at least one other employee in a similar job title as Plaintiff who worked in the same courthouse as Plaintiff, applied for a reasonable accommodation to be exempted from compliance with the Vaccination Mandate due to sincerely held religious beliefs as similar to Plaintiff, submitted substantially similar answers to UCS/OCA as Plaintiff, cited substantially similar scriptures as Plaintiff, and was approved by UCS/OCA to be exempt from compliance with the Vaccination Mandate.

51. Unlike Plaintiff, this other employee working in a similar job title as Plaintiff and working in the same courthouse as Plaintiff, was allowed to remain unvaccinated in the workplace and undergo weekly COVID-19 testing as a reasonable accommodation to the Vaccination Mandate.

52. Pursuant to UCS' Discrimination Claim Policy and Procedure, discrimination in the workplace, including religious discrimination, is prohibited, and any claims of discrimination are subject to investigation and an appeals process.

53. Notwithstanding the policy and procedure regarding the prohibition of discrimination in the workplace, Plaintiff was not given any option of appealing the denial of the request for a reasonable accommodation to be exempted from compliance with the Vaccination

8

Mandate due to sincerely held religious beliefs conflicting with receiving any COVID-19 vaccine(s).

54. Nevertheless, when Plaintiff's request for a reasonable accommodation to be exempted from the Vaccination Mandate was denied, Plaintiff was directed to submit proof of the first dose of a COVID-19 vaccine by July 8, 2022. (See Exhibit F).

55. Plaintiff received a final notice dated July 12, 2022 from the Civil Court of the City of New York regarding non-compliance with the Vaccination Mandate. (See **"Exhibit G"**).

56. The final notice indicated that, unless Plaintiff produced proof of vaccination from COVID-19 by July 26, 2022, Plaintiff would be terminated from employment with UCS. (See Exhibit G).

57. Plaintiff's official termination date from UCS was August 4, 2022.

## CAUSES OF ACTION:

### COUNT I
### AGAINST DEFENDANTS UCS AND OCA
### BASED ON VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Termination on the Basis of Religion:

58. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint and incorporate those allegations herein by reference.

59. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq*. contains the following definitions:

> (b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, any agent of such a person…;
> . . .
> (f) The term "employee" means an individual employed by an employer…
> …

9

> (j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

60. 42 U.S.C. §2000e-2 entitled UNLAWFUL EMPLOYMENT PRACTICES provides, in relevant part, as follows:

> Employer practices
>
> It shall be an unlawful employment practice for an employer –
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;
>
> (m) Impermissible consideration of race, color, religion, sex, or national origin in employment practices.
>
> Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated that practice.

61. Defendant UCS, upon information and belief, has employed not less than fifteen employees for all relevant periods and is a covered employer subject to Title VII.

62. Plaintiff, for all relevant periods herewith, was a covered employee of UCS.

63. Plaintiff is a practicing Christian and, as such, falls within the class of individuals protected by Title VII.

64. Plaintiff, due to sincerely held religious beliefs, cannot receive any COVID-19 vaccine(s).

65. UCS/OCA implemented a Vaccination Mandate that became a condition to maintain employment with UCS.

66. Plaintiff made a request for a reasonable accommodation with UCS/OCA to be exempted from compliance with the Vaccination Mandate due to Plaintiff's sincerely held religious beliefs which conflict with receiving any COVID-19 vaccine(s).

67. UCS/OCA denied Plaintiff's request for a reasonable accommodation to be exempted from the Vaccination Mandate without any justification or rational.

68. Upon information and belief, UCS/OCA granted numerous requests for a reasonable accommodation submitted by other employees of UCS to be exempted from compliance with the Vaccination Mandate.

69. Upon information and belief, the requests for reasonable accommodations that UCS/OCA granted for employees of UCS who could not receive any COVID-19 vaccine(s) due to sincerely held religious beliefs were allowed to remain in the workplace unvaccinated, while undergoing weekly COVID-19 testing and wearing a mask as an alternative to compliance with the Vaccination Mandate.

70. There was no undue hardship to UCS/OCA's operations if Plaintiff's request for a reasonable accommodation to be exempted from compliance with the Vaccination Mandate was granted.

71. Instead, Plaintiff was faced with the ultimatum of receiving the first dose of any COVID-19 vaccine within a definitive and limited amount of time or, alternatively, be terminated.

72. Since Plaintiff could not betray his faith and receive any COVID-19 vaccine(s), Plaintiff was terminated by UCS/OCA effective August 4, 2022.

73. The actions of Defendants, in terminating Plaintiff from employment due to Plaintiff exercising sincerely held religious beliefs, constitutes discriminatory unemployment practices in violation of Title VII.

74. As a direct result of the actions of Defendants' unlawful employment practices in violation of Title VII, Plaintiff has suffered and will continue to suffer harm, including, the violation of his rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, nominal damages and special damages.

## COUNT II
## AGAINST DEFENDANTS UCS AND OCA
## BASED ON VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 –
## Failure to Provide Reasonable Accommodations:

75. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint and incorporate those allegations herein by reference.

76. Prior to denying Plaintiff's request for a reasonable accommodation, UCS/OCA, through the Committee, requested Plaintiff to answer a series of questions under oath designed, upon information and belief, to assess the legitimacy and/or sincerity of Plaintiff's religious beliefs.

77. However, the Committee failed to engage in any interactive dialogue with Plaintiff in connection with the Plaintiff's request for a reasonable accommodation to be exempted from the Vaccination Mandate.

78. The fact that UCS/OCA allowed numerous employees of UCS to remain employed with UCS, working in-person at the court facilities, and remaining unvaccinated from COVID-19

due to the employees' religious beliefs clearly evidences that a reasonable accommodation was readily available.

79. Nevertheless, UCS/OCA failed to explore available reasonable alternatives to allow Plaintiff to remain gainfully employed and simultaneously adhere to Plaintiff's sincerely held religious beliefs.

80. UCS/OCA did not establish that there would be any undue hardship if Plaintiff's request for a reasonable accommodation to be exempted from compliance with the Vaccination Mandate was granted.

81. To the contrary, UCS/OCA did not suffer any undue hardship given that, upon information and belief, UCS/OCA granted numerous requests for a reasonable accommodation submitted by other employees of UCS to be exempted from the Vaccination Mandate and thus UCS/OCA allowed numerous individuals to remain in the workplace and unvaccinated from COVID-19.

82. UCS/OCA, in denying Plaintiff's request for a reasonable accommodation to be exempted from the Vaccination Mandate without engaging in the interactive process is in violation of Title VII.

83. As a direct result of the actions of Defendants' unlawful employment practices in violation of Title VII, Plaintiff has suffered and will continue to suffer harm, including, the violation of his rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, nominal damages and special damages.

**PRAYER FOR RELIEF:**

WHEREFORE, Plaintiff respectfully prays this Court grant relief as follows:

A. Declare that Defendants violated Title VII of the Civil Rights Act;

B. Provide injunctive relief directing UCS/OCA to reinstate Plaintiff;

C. Provide injunctive relief directing UCS/OCA to purge, expunge and remove all negative comments regarding Plaintiff's discharge from Plaintiff's personnel and/or employment record;

D. Award Plaintiff for actual, consequential and incidental financial losses, including, but not limited to loss backpay, front pay, benefits, and other compensation, including but not limited to pension-related compensation, plus interest;

E. Award Plaintiff compensatory damages;

F. Award Plaintiff punitive damages;

G. Award Plaintiff nominal damages;

H. Restore any vacation days, comp hours, and lost time hours used by Plaintiff;

I. Award Plaintiff reasonable attorneys' fees and costs of suit; and

J. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

Dated this 1st day of May, 2023

Respectfully Submitted,

*-S-*

_____
April Forbes, Esquire (**Bar #AF0833**)
PACIFIC JUSTICE INSTITUTE, INC.
Counsel for the Plaintiff
350 Northern Boulevard
Suite. 324, Box 1061
Albany, New York 12204-1000
(518) 721-8369 (Telephone)
(518) 707-0880 (Facsimile)
aforbes@pji.org (Email)