UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINCE DEMARIA,<br><br>         Plaintiff,<br>   -v-<br><br>NEW YORK STATE UNIFIED COURT SYSTEM &<br>NEW YORK STATE OFFICE OF COURT<br>ADMINISTRATION,<br><br>         Defendants. | 23 Civ. 3627 (PAE)<br><br><u>OPINION & ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

   Plaintiff Vince DeMaria here brings claims of religious discrimination against the New York State Unified Court System ("UCS") and the New York State Office of Court Administration ("OCA") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* DeMaria alleges, *inter alia*, that he was discriminated against on the basis of his religion when defendants fired him for refusing to comply with a mandatory COVID-19 vaccination policy, which DeMaria alleges violates his sincerely held religious beliefs. Defendants now move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that *Colorado River* abstention is warranted, *see Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), because DeMaria has a pending state court action arising from the same termination. For the reasons that follow, the Court denies the motion.

## I.     Background[1]

Between June 1997 and August 4, 2022, DeMaria was employed by UCS and OCA, Dkt. 8, Ex. 2 ("Art. 78 Pet.") at 3, as a court clerk assigned to the New York City Civil Court, Dkt. 9 ("Def. Mem.") at 3.  On August 25, 2021, in response to the COVID-19 pandemic, UCS announced a mandatory vaccination policy ("Vaccine Mandate").  It required "judges and non-judicial employees" to provide proof of vaccination against COVID-19 by September 27, 2021, unless otherwise approved, in writing, for a religious or medical exemption. Art. 78 Pet. at 27–32.  UCS announced that "upon request," it would "grant a religious exemption for sincerely held religious beliefs and practices which prohibit a judge or employee from receiving a COVID-19 vaccine." *Id.* at 41.  An employee was required to submit an "Affidavit of Religious Objection," explaining "the religious principle(s) that guide [the employee's] objections to vaccination, and the religious basis that prohibits the COVID-19 vaccination." *Id.* at 41, 43.  UCS and OCA convened a Vaccination Exemption Committee (the "Committee") to review written applications for exemptions.  Def. Mem. at 3.

On March 31, 2022, DeMaria submitted a religious exemption request to the Committee. Dkt. 3 ("Compl."), Ex. 1.  In his application, DeMaria stated that receiving a COVID-19 vaccine conflicts with his sincere religious beliefs. *Id.*  He stated that he believes that COVID-19 vaccines are produced using aborted fetal tissues, and that the "use of derivative biological

---

[1] The Court draws the facts in this decision principally from DeMaria's Complaint.  For purposes of a motion to dismiss under Rule 12(b)(1), a court may refer to evidence outside the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  The Court here has considered the declaration of Pedro Morales, Dkt. 8, Ex. 1 ("Morales Decl."), and the exhibits submitted by the parties as attachments to their filings, *see* Dkts. 3, 8, 11, 13.

material from such a grievous act as abortion is contrary to [his] sincerely held religious beliefs and practices." *Id.*

In response to DeMaria's religious exemption request, the Committee sent DeMaria a letter and accompanying form that "summarize[d] the current medical and scientific information regarding the COVID-19 vaccines and their development" responsive to DeMaria's concern about the "connection between fetal cells and the development of the COVID-19 vaccines." *Id.*, Ex. 3 at 1. The letter stated: "Fetal cell lines are not the same as fetal tissue (tissue obtained from a human embryo or fetus). Fetal cell lines are cells that grow in a laboratory. Historical fetal cells lines were derived in the 1960s and 1970s from two elective abortions . . . , and were not done for the purpose of vaccine development." *Id.* It added that "[w]hile fetal cell lines were used to develop or manufacture these COVID-19 vaccines, *no aborted fetal cells are in the vaccines themselves.*" *Id.* (emphasis in original). The Committee listed common pharmaceutical products that have been tested using the same fetal cell lined used to test COVID-19 vaccines. *Id.* at 2. On the accompanying form, DeMaria was asked whether he had "ever used any of the products listed in this group [of pharmaceutical products]"; he responded, "yes." *Id.* Asked whether he would use any listed product in the future, even if prescribed by a physician, DeMaria answered "no," adding, by hand, "not if similar circumstances were present." *Id.* The Committee asked DeMaria to "swear or affirm that taking *any* of the COVID-19 vaccines would violate [his] sincere religious beliefs due to their connection to fetal cell lines in either testing or production." *Id.* at 1. On May 6, 2022, DeMaria did so, and returned a signed form.

On June 8, 2022, the Committee sent DeMaria a letter asking him to clarify his comment on the form: "[not] if similar circumstances were present." *Id.*, Ex. 4. The next day, DeMaria wrote to the Committee: "I mean, if similar circumstances regarding development and

manufacturing processes" exist for the listed pharmaceutical products, "namely, the use of fetal

cell lines" in their development, "then my objection . . . regarding their consumption is the

same." *Id.*, Ex. 5.

On June 23, 2022, the Committee informed DeMaria that his religious exemption request

had been denied. Compl., Ex. 6. It notified him that he was required, within 10 workdays, to

submit proof of having received a COVID-19 vaccination. *Id.* On July 12, 2022, Alia Razzaq,

Chief Clerk of the New York City Civil Court, provided DeMaria with a "Notice of Failure to

Meet Qualification for Employment." *Id.*, Ex. 7. The Notice informed DeMaria that he was not

in compliance with the Vaccine Mandate, and that if he failed to provide proof of vaccination by

July 26, 2022, he would be terminated. *Id.*

On August 4, 2022, after failing to provide proof of vaccination, DeMaria was

terminated. Art. 78 Pet. at 3.

## II.    DeMaria's Legal Actions Challenging His Termination

### A.  New York State Court Article 78 Proceeding

On December 2, 2022, DeMaria commenced a proceeding in New York State Supreme

Court in Manhattan under Article 78 of the New York Civil Practice Law and Rules ("CPLR").[2]

*Id.* at 2. His Article 78 petition (the "Petition") "challenge[d] the final decision of [UCS and

OCA] to wrongfully terminate him from employment" after denial of his request for a religious

---

[2] In an Article 78 proceeding, parties can seek "[r]elief previously obtained by writs of certiorari
to review, mandamus or prohibition." N.Y. C.P.L.R. § 7801. Article 78 proceedings "replaced
the use of common-law writs to contest the legality of the actions of a 'body or officer' of New
York State." *Barulic-Stiles v. N.Y. Div. of Hum. Rts.*, No. 10 Civ. 7375 (JFK), 2011 WL
4373958, at *3 (S.D.N.Y. Sept. 19, 2011). "These writs at common law had typically been used
to challenge or appeal decisions made by governmental bodies." *40-46 Main St. Realty Corp. v.
City of New York*, No. 16 Civ. 6900 (SJ) (SJB), 2017 WL 6886718, at *5 (E.D.N.Y. Nov. 27,
2017), *report and recommendation adopted*, 2018 WL 354683 (E.D.N.Y. Jan. 10, 2018).

exemption from the Vaccine Mandate. *Id.* The Petition brought three claims: that (1) defendants' actions are "arbitrary and capricious under Article 78," *id.* at 16–20; (2) defendants' termination of DeMaria was "an abuse of discretion" under Article 78, *id.* at 20–21; and (3) DeMaria is entitled to attorney's fees and other expenses under Article 86 of the CPLR, *id.* at 21–23. As relief, DeMaria's Petition sought (1) reinstatement "to his position as a senior court clerk" and annulment of his termination; (2) approval of his religious exemption application; (3) an award of "all back pay in salary, benefits, and all other benefits of his employment;" (4) reasonable attorney's fees and litigation costs. *Id.* at 23.

On February 3, 2023, UCS and OCA moved to dismiss the Petition on the ground that it is time-barred. Dkt. 8, Ex. 3 at 2. The New York Supreme Court several times adjourned the deadlines for briefing that motion, *see* Dkt. 8, Ex. 6, noting that UCS and OCA had rescinded the COVID-19 vaccination policy on February 17, 2023. Dkt. 8, Ex. 6 at 2. Ultimately, DeMaria's opposition to the motion to dismiss was due and filed on May 19, 2023; the reply was filed June 8, 2023. *Id.* at 6. The motion remains pending.

### B. EEOC Proceeding

DeMaria also filed for relief before the Equal Employment Opportunity Commission ("EEOC"). In September 2022, DeMaria contacted the EEOC; on January 11, 2023, the EEOC interviewed him. Dkt. 11 ("Pl. Mem.") at 6. On February 8, 2023, DeMaria filed a charge of discrimination. Dkt. 8, Ex. 4 at 2–3.

On February 15, 2023, the EEOC issued a "Notice of [the] Right to Sue," stating that it "will not proceed further with its investigation," but that DeMaria could "file a lawsuit . . . on this charge under federal law in federal or state court." *Id.*, Ex. 5 at 2. The Notice stated that DeMaria had 90 days to bring suit. *Id.*

### C. This Action

On May 2, 2023, DeMaria filed the Complaint in this action against UCS and OCA.  It asserts two causes of action, both under Title VII.  These claim that defendants unlawfully: (1) terminated DeMaria on the basis of his religion; and (2) failed to reasonably accommodate his religious beliefs.  Compl. ¶¶ 58–83.  The Complaint seeks, *inter alia*, (1) declaratory relief, to the effect "that Defendants violated Title VII"; (2) injunctive relief "directing UCS/OCA to reinstate [DeMaria]" and to "purge, expunge and remove all negative comments regarding [DeMaria's] discharge from [his] personnel and/or employment record"; (3) an award of "actual, consequential and incidental financial losses, including, but not limited to loss backpay, front pay, benefits, and other compensation, including but not limited to pension-related compensation, plus interest"; (4) compensatory damages; (5) punitive damages; (6) nominal damages; and (7) reasonable attorney's fees and costs.  *Id.* at p. 14.

On July 31, 2023, UCS and OCA filed a motion to dismiss under Rule 12(b)(1) on the ground that the Court should abstain from exercising jurisdiction in favor of the concurrent state court proceeding, Dkt. 8, and a memorandum of law in support, Dkt. 9.  On August 1, 2023, the Court issued an order directing DeMaria to either amend the Complaint or respond to the motion to dismiss.  Dkt. 10.  On August 18, 2023, DeMaria filed an opposition.  Dkt. 11.  On August 28, 2023, UCS and OCA filed a reply.  Dkt. 12 ("Def. Reply").

### III.    Evaluation of DeMaria's Motion to Dismiss Under Rule 12(b)(1)

USC and OCA pursue dismissal on the ground that the Court should abstain from exercising jurisdiction over this case based on the *Colorado River* abstention doctrine.

### A. Applicable Legal Standards

#### 1. 12(b)(1) Motion

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113 (citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citation omitted). "A motion to dismiss based on the abstention doctrine" is properly "considered as a motion made pursuant to Rule 12(b)(1)." *City of New York v. Milhelm Attea & Bros.*, 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008) (citations omitted).

#### 2. *Colorado River* Abstention Doctrine

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. Although duplicative litigation as between federal courts is ordinarily to be avoided, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction. . . . This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* at 817 (citations omitted).

Under the *Colorado River* abstention doctrine, a court may abstain from exercising jurisdiction in favor of a concurrent state court proceeding in "exceptional circumstances," where the resolution of existing concurrent state-court litigation could result in "comprehensive

disposition of litigation." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 521–22 (2d Cir. 2001). *Colorado River* abstention applies only in situations "involving the contemporaneous exercise of concurrent jurisdictions." *Dimter v. County of Suffolk*, 146 F.3d 113, 117 (2d Cir. 1998).

Thus, before a federal court evaluates the appropriateness of abstention under *Colorado River*, it must make "a threshold determination that the federal and state court cases are 'parallel.'" *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) (citations omitted). "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Id.* (citations omitted).

If a federal court finds the actions parallel, it then determines whether abstention is warranted by considering several factors: "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights." *Woodford*, 239 F.3d at 522 (internal citations omitted).

"No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15–16 (1983). "[T]he balance [is] heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16. As such, "the facial neutrality of a factor is a basis for retaining

jurisdiction, not for yielding it." *Woodford*, 239 F.3d at 522.  To prevail on a motion to dismiss

based on abstention, the movant shoulders a "heavy burden" because only "the clearest

justifications will warrant dismissal." *King v. Hahn*, 885 F. Supp. 95, 97 (S.D.N.Y. 1995).

### B. Discussion

UCS and OCA argue that the Court should abstain under *Colorado River* from exercising

jurisdiction, in deference to the Article 78 proceeding pending in in state court.  Defendants thus

must show that the state court action is "parallel," and that the *Colorado River* factors favor

abstention.  The Court finds neither requirement met, and that this case therefore "does not

present the exceptional circumstances" required to justify abstention. *Woodford*, 239 F.3d at

526.

### 1.  Federal and State Court Proceeding Are Not Parallel

"Lawsuits are considered 'parallel' if 'substantially the same parties are

contemporaneously litigating substantially the same issue' in both forums." *Kingsley v. N.Y.C.*

*Hous. Auth.*, No. 16 Civ. 169 (KPF), 2016 WL 5939359, at *3 (S.D.N.Y. Oct. 6, 2016) (citation

omitted).  "Complete identity of parties and claims is not required; the parallel litigation

requirement is satisfied when the main issue in the case is the subject of already pending

litigation." *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp.

2d 170, 182 (E.D.N.Y. 2012).  To find cases parallel, a court must find a "substantial likelihood

that the state litigation will dispose of *all* claims presented in the federal case." *Stone v. Patchett*,

No. 08 Civ. 5171 (RPP), 2009 WL 1108596, at *14 (S.D.N.Y. Apr. 23, 2009).

Here, the Court finds, the state and federal actions are not parallel because the parties are

not litigating "substantially the same issue[s]" in the two proceedings. *Kingsley*, 2016 WL

5939359, at *3.  The parties to the two suits are identical: DeMaria sues UCS and OCA in both

the state and federal action.  But the issues litigated in the proceedings are not "substantially the same."  *Id.*  They overlap in part, but not completely, as to the remedies DeMaria seeks; and they will be resolved subject to different standards of liability.  In the federal action, DeMaria brings two claims under federal law (Title VII), alleging termination on the basis of religious discrimination and a failure to reasonably accommodate his religious beliefs.  In the state action, in contrast, DeMaria brings claims under state law (CPLR Article 78), alleging that the decision to terminate him was arbitrary and capricious and an abuse of discretion.  Although both proceedings thus arise from DeMaria's termination for refusing to get a COVID-19 vaccine and from defendants' denial of his religious exemption request, the legal standards governing DeMaria's claims differ, and the remedies available differ, in part, too.

At the threshold, the statutes under which DeMaria sues serve distinct purposes. Congress enacted Title VII to "eliminat[e] the effects of discrimination in the workplace." *Johnson v. Transportation Agency*, 480 U.S. 616, 630 (1987).  "Title VII is the strong solvent Congress used not only to remove the stain discrimination leaves on equality in the workplace, but also to make victims of discrimination whole."  *Carrero v. N.Y.C. Hous. Auth.*, 890 F.2d 569, 580 (2d Cir. 1989).  As such, the remedies available under Title VII are broad.  They include back pay, front pay, injunctive relief, compensatory damages for emotional pain, suffering, mental anguish, and punitive damages.  *See* 42 U.S.C. § 2000e-5(g)(1) ("If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate."); *id.*

§ 1981a(a)(1) (Title VII plaintiffs subjected to "unlawful intentional discrimination . . . may recover compensatory and punitive damages."); *id.* § 1981a(b)(3) (compensatory damages for Title VII violations can cover: "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses").

An Article 78 action, in contrast, "is a form of proceeding available to compel public officials to comply with their responsibilities," *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002), and to "challeng[e] a specific decision of a state administrative agency," *Campo v. N.Y.C. Ems.' Ret. Sys.*, 843 F.2d 96, 101 (2d Cir. 1988). "Article 78 proceedings provide for speedy review of administrative action and thus serve as an integral part of the regulatory process." *Liotta v. Rent Guidelines Bd. for N.Y.C.*, 547 F. Supp. 800, 802 (S.D.N.Y. 1982). Substantively, it "closely resembles review under the federal Administrative Procedure Act." *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 508 (E.D.N.Y. 2019). Article 78 "makes available types of relief which, before its enactment, were obtainable in New York's courts only by writs of certiorari, mandamus or prohibition." *Campo*, 843 F.2d at 101. The only questions that may be raised in Article 78 proceedings are: (1) "whether the body or officer failed to perform a duty enjoined upon it by law"; (2) "whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction"; (3) "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" or (4) "whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence." N.Y. C.P.L.R. § 7803. An Article 78 court "may award reinstatement and back pay, injunctive and declaratory relief, and attorney's fees." *Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 782 (S.D.N.Y. 2003). But, as reviewed more fully below, there are limits

to the damages an Article 78 petitioner can recover. "Any restitution or damages granted to the petitioner must be incidental to the primary relief sought by the petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity." N.Y. C.P.L.R. § 7806.

Befitting their distinct functions, the two statutes require the plaintiff/petitioner to make different showings to establish liability. To prevail under Title VII, DeMaria must establish, *inter alia*, that defendants terminated him on the basis of his religious beliefs. *Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 369 (S.D.N.Y. 2008) ("Courts interpret [Title VII] to mean that an employer cannot discriminate against any employee on the basis of the employee's religious beliefs unless the employer shows that he cannot reasonably accommodate the employee's religious needs without undue hardship on the conduct of the employer's business." (internal quotation marks omitted)). To prevail in his Article 78 Petition, DeMaria must show, *inter alia*, that the decision to terminate him was arbitrary and capricious or an abuse of discretion, *i.e.*, "without sound basis in reason." *Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.*, 14 F.3d 818, 823 (2d Cir. 1994). The elements and nature of these claims thus are different, in that, *inter alia*, DeMaria under Article 78 need not prove religious discrimination as a basis for the termination decision, and under Title VII need not prove that the decision was arbitrary and capricious. *Cf. Farkas v. D'Oca*, 857 F. Supp. 300, 303 (S.D.N.Y. 1994) ("[T]he fact that both actions arise out of a similar set of circumstances is not sufficient justification for abstention where the claims are not concurrent."); *All. of Am. Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir. 1988) ("While there may be some overlap of subject matter, it is not sufficient to make these actions concurrent.").

In pursuing abstention, UCS and OCA assert that in both lawsuits, DeMaria "is asserting the same claim," namely, that the denial of DeMaria's request for religious exemption and subsequent termination "constitute religious discrimination arising from UCS and OCA's failure to accommodate his religious belief in violation of Title VII." Def. Mem. at 10.  As the above discussion reflects, that is incorrect.  Both lawsuits derive from DeMaria's termination and defendants' denial to him of a religious exemption, but they assert violations of different legal standards.  The Article 78 Petition does not embed a Title VII claim, and a finding of religious discrimination within the meaning of Title VII is not required for DeMaria to prevail under Article 78.  *See* Art. 78 Pet. at 16–23.

To be sure, the Petition references Title VII, in its brief three-page review of EEOC guidance regarding religious accommodations.  Art. 78 Pet. at 11–13.  The Petition notes that EEOC's guidance "cautioned employers about questioning the religious nature or the sincerity of a particular religious belief, observance, or practice."  *Id.* at 12.  And it describes the EEOC's guidance as counseling that "under Title VII, an employer should assume that a request for religious accommodation is based on sincerely held religious beliefs" because the "sincerity of an employee's stated religious beliefs [] is not usually in dispute" and is "largely a matter of individual credibility."  *Id.* at 13.  The Petition's claim of abuse of discretion under Article 78 similarly identifies defendants' failure to heed EEOC guidance as one reason defendants abused their discretion.  *Id.* at 20–21 ("[Defendants'] review of Petitioner's Exemption Application was in contravention of the Religious Discrimination Guidance and Technical Assistance because it scrutinized the sincerity of [DeMaria's] religious beliefs without establishing any bona fide doubt as to the basis for his request.")

13

These references are insufficient to make the two actions parallel, because "the main issue" in this action—whether defendants engaged in religious discrimination in violation of Title VII—is distinct from the issue being litigated in state court. *First Keystone*, 862 F. Supp. 2d at 182. The claims brought in the two actions are distinct. The claims here will not be resolved under the standards applicable to Article 78, and the New York State Supreme Court will not be under any obligation to consider whether defendants violated Title VII. Because the Petition asserts numerous other bases on which it contends that UCS and OCA abused their discretion and/or acted arbitrarily and capriciously, the state court could rule for DeMaria without any assessment of defendants' compliance with Title VII. The actions thus are not parallel. *See, e.g., Rehab. Support Servs., Inc. v. Town of Esopus*, 226 F. Supp. 3d 113, 130 (N.D.N.Y. 2016) ("The Court agrees with Plaintiff that the two actions are not parallel because (a) this action involves a challenge to the Town's Code as being facially discriminatory, and (b) the Article 78 proceeding challenges the [zoning board's] determination as being arbitrary and capricious under state law."); *Mclean-Katter, LLC v. Keegan*, No. 06 Civ. 1499 (SJF) (ARL), 2006 WL 3050878, at *2 (E.D.N.Y. Oct. 20, 2006) (finding lack of parallelism where "[t]he federal complaint seeks vindication for the alleged discriminatory acts of the defendants, . . . pursuant to federal statutory and constitutional law," and "[t]he narrow issue before the state court in both Article 78 proceedings is whether the Town Board's resolution . . . was arbitrary and capricious" and holding that "the claims and issues alleged in the federal complaint are much broader than those in the Article 78 petitions"); *Broich.v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 243 (E.D.N.Y. 2009) (finding lack of parallelism between Article 78 proceeding, in which plaintiff contended his termination was "arbitrary and capricious and an abuse of

discretion," and federal action that sought "vindication for defendants' alleged discriminatory and retaliatory acts pursuant to federal law").

Thus, the Court finds the federal and state actions, although arising from common facts, are not parallel. That alone defeats defendants' bid for *Colorado River* abstention.

### 2. *Colorado River* Factors

Even were the actions parallel, the balance of factors disfavors abstention.

#### a. *Involvement of a res*

A court must consider "whether the controversy involves a res over which one of the courts has assumed jurisdiction." *Woodford*, 239 F.3d at 522. The parties agree that this case does not involve a res; thus, this factor is neutral. *Id.* And "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Id.* The "absence of a res [thus] point[s] toward exercise of jurisdiction." *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999).

#### b. *Inconvenience of the forum*

This factor inquires "whether the federal forum is less inconvenient than the other for the parties." *Woodford*, 239 F.3d at 522. The parties agree that the federal and state fora are equally convenient "since the two courthouses are adjacent to each other." *Kshel Realty Corp. v. City of New York*, No. 01 Civ. 9039 (LMM), 2003 WL 21146650, at *5 (S.D.N.Y. May 16, 2003). "[W]here the federal court is just as convenient as the state court, that factor favors retention of the case in federal court." *Vill. of Westfield*, 170 F.3d at 122 (internal quotation marks omitted).

#### c. *Avoidance of piecemeal litigation*

This factor inquires "whether staying or dismissing the federal action will avoid piecemeal litigation." *Woodford*, 239 F.3d at 522. "[T]he primary context in which [the Second Circuit] ha[s] affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has

involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Id.* at 524. Defendants argue that "[g]iven the identity of issues," the "concurrent litigations will certainly generate a contest between two courts to see which can resolve the same issues first." Def. Mem. at 11–12.

That is incorrect. It is certainly possible that the resolution of one case could lead DeMaria to drop (or the parties to settle) the other. Given that the relief DeMaria seeks in each case centrally includes backpay and reinstatement, a resolution of the first might well influence the path of the other. But it might not. In all events, DeMaria seeks this relief based on distinct legal standards in the two actions, such that it cannot be said that the parties will be litigating the "same issue" in the two.[3] Thus, the resolution of one lawsuit is not apt to dictate, as a matter of law, the outcome of the other. And were the two cases to result in DeMaria's prevailing under one body of law and UCS and OCA prevailing under the other, these judgments would almost certainly be legally compatible.

It is of course conceivable that, insofar as the two actions challenge the same job action, they will each embed and be called upon to resolve, pretrial or at trial, an identical question. Whether such occurs cannot be forecast in advance—such will depend on the course the lawsuits take. But defendants do not explain why, should that scenario arise, the principles of res judicata

---

[3] Defendants relatedly impugn DeMaria's motives, contending that he initiated the federal litigation to "ensure a second opportunity to press his claims against" them. Def. Mem. at 13. There is no impropriety in DeMaria's pursuit of relief under federal law after initially filing suit under state law. The Title VII claims afford distinct potential damages relief. In addition to backpay, which he also seeks in the Article 78 proceeding, Title VII permits an award of compensatory damages for other "pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). And DeMaria has a benign explanation for filing the federal lawsuit when he did. As he explains, he commenced this action to comply with the 90-day deadline to sue afforded by the EEOC's Notice. The Court thus rejects defendants' argument that the timing of the federal litigation bespeaks vexatious motives.

and collateral estoppel would not be available and effective to prevent the second forum from reaching an outcome inconsistent with that reached by the first. *Abe v. N.Y. Univ.*, No. 14 Civ. 9323 (RJS), 2016 WL 1275661, at *7 (S.D.N.Y. Mar. 30, 2016). In cases where "the parties to the state and federal actions are not identical," these doctrines generally do not apply, and so the presence of parties unique to one lawsuit has potential to give rise to inconsistent judgments across the lawsuits. *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 599–600 (S.D.N.Y. 2013) (internal quotation marks omitted). But that is not a risk here, as the parties to the two actions are identical.

The Court accordingly finds the risk of inconsistent outcomes too conjectural and remote to counsel abstaining here. *See, e.g., id.* (abstention "more appropriate" under this factor when the parties to the actions are not identical); *Wooford*, 239 F.3d at 524 ("The classic example of [inconsistent outcomes] arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties."); *Fischmann v. VisionTel, Inc.*, 934 F. Supp. 115, 118 (S.D.N.Y. 1996) (this factor disfavors abstention where there is no risk of inconsistent judgment because the parties to the actions are identical and "principles of issue preclusion and collateral estoppel will affect the second judgment, and inconsistent judgments will not result.").

### d. *Filing order and progress of litigation*

Under this factor, a court must consider "the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other." *Woodford*, 239 F.3d at 522 (internal citations omitted). "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses Cone Mem'l*, 460 U.S. at 21.

DeMaria's Article 78 Petition, filed December 2, 2022, preceded the federal complaint, filed May 2, 2023. But in substance, the state case is not materially farther along. Both actions are in their early stages, with motions to dismiss pending. That the Article 78 action was filed five months before this action weighs only slightly in favor of abstention—not enough to carry the day on its own. *See, e.g.*, *Kshel Realty*, 2003 WL 21146650, at *5 ("[E]ven though the state court actions were filed in advance of the federal action, there has not been such significant progress in those cases to persuade the Court that abstention is necessary."); *Sacody Techs., Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1159 (S.D.N.Y. 1994) (finding "the prior filing of the [state action] is not significant . . . because little progress has been achieved to date in either forum" and thus holding that the factor did not favor dismissal); *Dobzeniecki v. Stone & Webster Eng'g Corp.*, 716 F. Supp. 87, 91 (E.D.N.Y. 1989) ("Where, as here, both actions have not progressed beyond the noticing of discovery demands, this factor is insignificant except to continue the weighted balance in favor of maintaining jurisdiction.").

### e.   *Law supplying rule of decision*

This factor "requires a review of what law—state, federal, or foreign—provides the rule of decision in the case." *Dalzell Mgmt.*, 923 F. Supp. 2d at 601. "When the applicable substantive law is federal, abstention is disfavored," and even "the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Vill. of Westfield*, 170 F.3d at 124 (cleaned up). This factor weighs heavily against abstention. Federal law alone governs DeMaria's Title VII claims—such are his only claims here. *See Moses Cone*, 460 U.S. at 26 ("The presence of federal-law issues must always be a major consideration weighing against surrender [of federal jurisdiction]."); *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 103 (2d Cir. 2012) (that

federal issues "predominate" weighed heavily against abstention); *Dalzell Mgmt.*, 923 F. Supp. 2d at 601 (abstention disfavored where plaintiff's claims arise under both federal and state law).

### f.  Adequate protection of DeMaria's rights

As to this final factor, a court must determine "whether the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Id.* at 602 (internal quotation marks omitted).  "If there is any substantial doubt as to this, it would be a serious abuse of discretion" to abstain.  *Moses*, 460 U.S. at 28.  DeMaria argues that the state court action is not an adequate vehicle for complete resolution of the pending issues because, *inter alia*, he cannot recover compensatory damages for emotional distress in the Article 78 proceeding—relief that is available to him in the federal action. DeMaria is correct.

In the federal action, DeMaria seeks a range of monetary, declaratory, and injunctive relief.  Salient to this point, the monetary damages he seeks go beyond the backpay he also pursues in the Article 78 proceeding.  These include broad-ranging compensatory damages— including front pay, and damages for "mental and emotional distress," including "inconvenience," "pain and suffering," "stress," "anxiety," and "embarrassment."  Compl. ¶ 74. Such remedies are available under Title VII. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 847 (2001) (in Civil Rights Act of 1991, Congress expanded remedies available under Title VII to include broad-ranging compensatory and punitive damages, in addition to traditional remedies of injunctions, reinstatement, backpay, front pay, lost benefits, and attorney's fees); *cf.*

*Pino v. Locascio*, 101 F.3d 235, 236 (2d Cir. 1996) (nominal damages also available under Title VII).[4]

In contrast, Article 78, consistent with the limited prayer for monetary relief that DeMaria makes in his state action, consisting of back pay and an award of attorney's fees and costs, affords a court a more limited charter as to monetary damages. Compensatory damages are recoverable in Article 78 proceedings only if they are "incidental to the primary relief sought" in that proceeding. N.Y. C.P.L.R. § 7806; *see Best Payphones*, 410 F. Supp. 3d at 508 ("Similar to an APA claim, money damages under an Article 78 petition are limited to the equitable redress of the administrative action."); *Latino Officers Ass'n*, 253 F. Supp. 2d at 782 ("An Article 78 court … may award reinstatement and back pay, injunctive and declaratory relief, and attorney's fees."); *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986) ("essential purpose" of an Article 78 proceeding is "a speedy correction of improper action by a 'body or officer'" such as "release from confinement, reinstatement of employment, or reinstatement of a terminated license."). DiMaria does not contend, and defendants do not concede, that emotional distress damages would be attainable in his Article 78 proceeding as "incidental to the primary relief sought." N.Y. C.P.L.R. § 7806. The Article 78 case law suggests that such damages would not be available there. *See, e.g.*, *Antonsen v. Ward*, 943 F.2d 198, 204 (2d Cir. 1991) ("Because the compensatory damages [petitioner] seeks pursuant to New York Executive Law

---

[4] DeMaria's bid for punitive damages, Compl. at p. 14, however, is not viable, because his Title VII claims are directed at a political subdivision of the state. *See* 42 U.S.C. § 1981a(b)(1); *see also Trivedi v. N.Y.S. Unified Ct. Sys. Off. of Ct. Admin.*, 818 F. Supp. 2d 712, 743 (S.D.N.Y. 2011), *aff'd sub nom. Seck v. Off. of Ct. Admin.*, 582 F. App'x 47 (2d Cir. 2014) ("[The Office of Court Administration] and the New York State Unified Court System are political subdivisions of the State."); *Lebron v. Dep't of Soc. Servs.*, No. 22 Civ. 155 (VAB), 2023 WL 184245, at *5 (D. Conn. Jan. 13, 2023) (plaintiff not entitled to punitive damages under Title VII against the "Department of Social Services," as it is "a State of Connecticut agency").

are for emotional pain and suffering, they are not incidental to the main relief [petitioner] sought in state court: a declaration that the department's actions were arbitrary and capricious and reinstatement to his former position."); *see also Metropolitan Taxicab Bd. of Trade v. N.Y.C. Taxi & Limousine Comm'n*, 928 N.Y.S.2d 88, 90 (1st Dep't 2014) ("Incidental damages are generally confined to monies that an agency either collected from or withheld from a petitioner and then was obligated to reimburse after a court annulled a particular agency determination."); *Latino Officers Ass'n*, 253 F. Supp. 2d at 782 ("[C]ompensatory damages are not available to an Article 78 petitioner who primarily seeks reinstatement."); *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 348 (1999) (compensatory damages for "embarrassment, loss of reputation and mental anguish" not "incidental" damages in Article 78 proceeding seeking reinstatement and backpay because damages claims do not seek "restoration of any economic benefits derivable from [petitioner's] status as a member of [the fire department]"); *Davidson*, 792 F.2d at 282 (prisoner seeking damages under 42 U.S.C. § 1983 in federal action could not have joined § 1983 claim in prior Article 78 proceeding arising out of same facts, because damages were not "incidental to the primary relief sought" in the Article 78 proceeding, which was reinstatement of benefits and return of property from prison cell); *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 11 Civ. 2920 (KAM), 2020 WL 5820327, at *9 (E.D.N.Y. Sept. 30, 2020), *aff'd*, 2022 WL 1715977 (2d Cir. May 27, 2022) ("Damages for civil rights violations are generally not incidental damages recoverable in an Article 78 proceeding." (internal quotation marks omitted)).

Thus, given the narrower damages available, the Article 78 proceeding DeMaria brings is not an "adequate vehicle for the complete and prompt resolution of the issues between the parties" in this lawsuit. *Dalzell Mgmt.*, 923 F. Supp. 2d at 602.  Were the Court to abstain from

exercising jurisdiction, the Article 78 proceeding, by its nature, would not be equipped to adequately protect DeMaria's rights under federal law. This factor, accordingly, weighs against abstention. *See, e.g., Yien-Koo King v. Wang*, No. 14 Civ. 7694 (JFK), 2018 WL 1478044, at *9 (S.D.N.Y. Mar. 26, 2018) (state court action inadequate to protect plaintiff's federal rights because plaintiff could not recover treble damages in state court); *Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 666–67 (S.D.N.Y. 2016) (state court actions inadequate to protect plaintiffs' rights because remedies of treble damages and attorney's fees available in federal action would not be available in state action).

In sum, five of the six *Colorado River* factors disfavor abstention. Only the fourth, relating to the filing order and relative progress of the two actions, favors abstention, and it does so only marginally. Balancing these factors in light of "the heavy presumption favoring the exercise of federal jurisdiction," the Court finds the "exceptional circumstances" required for abstention not present here. *Dalzell Mgmt.*, 923 F. Supp. 2d at 602. The Court declines to abstain under *Colorado River* and will continue to exercise jurisdiction over this case.

## CONCLUSION

For the foregoing reasons, the Court denies UCS and OCA's motion to dismiss the action pursuant to *Colorado River*. The Clerk of Court is respectfully directed to terminate the motion at Docket 8. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), UCS and OCA must answer the Complaint by March 26, 2024. An order scheduling an initial pretrial conference in this case will issue shortly.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 12, 2024
      New York, New York